TUCKER, Judge.
The plaintiff, Harrison J. Cheramie, Jr., sued to recover damages for personal injuries, pain and suffering, residual impairment, medical expenses and loss of wages, arising from a vehicular accident, involving his 1965 model International panel truck and a 1964 model Ford car, owned by Chester Lloyd and being driven at the time by Ronald Lloyd. The accident occurred about 4:30 P.M. on March 4, 1967 at the intersection of a pontoon bridge and La. Rte. No. 308 in the Parish of La-fourche, on the north side of the town of Cut Off, La. The Lloyd vehicle traveled north on La. Rte. No. 1 on the west side of the bayou, then turned right, moving easterly across the bridge, preparatory to turning north on said La. No. 308.
Previous to the accident, Ronald Lloyd, accompanied by his father, Chester R. Lloyd, the owner of the Ford car, and Mr. and Mrs. Joe Wilson as passengers, had left their respective homes in Slidell, La. and driven south on State Rte. 1 on the west side of Bayou Lafourche to a restaurant which was a short distance south of the subject bridge. They were attracted to this place by a report that the oysters were good and inexpensive. After the group finished eating they started their trek back to Slidell, and apparently decided to proceed homeward on the east side of the Bayou.
Ronald Lloyd, the operator of the Ford car, testified he saw what he recognized to be a stop sign warning traffic going easterly of the duty to stop when he was about the middle of the bridge. This structure was proved to be 220 feet in length. He also stated that the stop sign was partially obscured when he first saw it. The evidence is in conflict with respect to whether Lloyd came to a full and complete stop. Lloyd said he did so stop, and then attempted to move forward enough to avoid *488 the impingement of his view north and south created by a utility pole. Other witnesses were just as certain that he did not come to a full stop. This is unimportant in view of the fact that Lloyd undisputedly drove the Ford car some distance into the plaintiff’s lane of travel, thus substantially blocking Cheramie as he traveled south. In order to avoid a collision with the Ford car the plaintiff turned his panel truck to the left, drove over a small hump, and the truck turned over in the yard of a residence on the east side of Rte. No. 308. As a result of the accident plaintiff suffered grievous and grave physical injuries. He is paralyzed from the level of his shoulders down.
The trial court rendered judgment in favor of the plaintiff in the sum of $1,211,453.88 with legal interest and costs. From this judgment the defendant, State of Louisiana, has perfected this appeal.
The defendant contends here that the evidence does not show any act of commission or omission on the part of the Department of Highways, its adjunct, which had any causal connection with the accident.
The evidence justifies the determination of the trial court that the Lloyd vehicle did not come to a complete stop when the driver of same was confronted by the stop sign before reaching the intersection of the pontoon bridge and Rte. No. 308.
The lower court in rendering its judgment reasoned that Ronald Lloyd was incorrect in his testimony that he saw the stop sign apparently for the reason that it was so obscured by the utility pole or cross arm (then in an upright position) and used in the down position to warn motorists that the bridge was open in order to accommodate bayou boat traffic). We do not agree with this crucial conclusion by the trial judge as we shall illustrate.
The plaintiff contends that not only was the defendant negligent in failing to properly maintain and position the stop sign, but, as well, there was a blinker or beacon light suspended over the subject intersection which had not been in operation for a substantial length of time previous to the accident with the actual or constructive knowledge of the Department of Highways that the light was not working. It was argued that the combination of these two factors indicted the defendant with actionable negligence which represented a cause in fact of the accident, and justified the judgment of the trial court. Plaintiff further points to the Department manual with respect to the duties imposed insofar as the maintenance of devices designed to warn the traveling public such as signs and “flashing beacons”. These manual rules not only require such devices to be properly maintained so as to insure legibility and visibility, but state that a sign should be removed if no longer needed. In this regard it was stipulated that the blinker light fixture was installed by the Lafourche Parish Police Jury; that the Department never agreed to its installation, and had no record of the existence of the beacon light. Plaintiff urges the duty of the Department to remove or order the removal of unauthorized signs and other devices which are placed on highway property. Without doubt the Department had constructive knowledge of the inoperative beacon light.
The record shows that the stop sign was partially visible midway the bridge and wholly visible when a motorist on the bridge traveling east was 27 feet to the west of the sign. There was an added five feet of the bridge from the position of the sign to the east edge of the bridge and an additional 16 feet from that point to the west edge of the blacktop of Rte. 308. Consequently, Ronald Lloyd had a distance of 48 feet from the point on the bridge where he could see the complete stop sign until he reached the blacktop surface of the subject road. Of course, the precise point Lloyd had reached on the bridge, when he saw a sufficient portion of the sign to warn him that he should stop at the intersection, is not so definitely fixed, but no witness refuted Lloyd’s estimate that he saw the sign when he had reached about *489 the middle of the bridge, which would have been a point approximately 110 feet from the eastern edge of the bridge.
Plaintiff argues that Ronald Lloyd was unfamiliar with the bridge, having never traversed it previously. Nonetheless, Ronald Lloyd says he did see the stop sign as he was crossing the bridge. No one contradicted this portion of his testimony and that of his father, Chester R. Lloyd. It is true that he had never crossed the bridge previously, but he says his father informed him that there was a highway on the east side of the bridge.
Plaintiff claims that Lloyd’s testimony that he saw the stop sign sufficiently in advance of the intersection to stop the Ford car is suspect and unbelievable. In accounting for this premise plaintiff’s counsel theorizes that the Lloyds were not disinterested witnesses in that they were desirous of absolving Ronald Lloyd from any responsibility for the severe injuries experienced by Cheramie in the accident. We are unable to decipher this reasoning, for it appears that the converse thesis would hold true. Certainly, the admission on the part of Ronald Lloyd and his father that they saw the stop sign was not calculated to relieve any guilt feeling which might have been harbored by Ronald Lloyd as a result of the accident.
The law and cases cited by the plaintiff with respect to the duty of the Department to place signs in locations where they will serve the purposes for which signs are intended have no application here for the plain reason that the intervening pole or cross arm did not reduce Lloyd’s view of the sign to such an extent that he was unable to discern that it was a stop sign. As a matter of fact the testimony of the other witnesses and the photographic evidence soundly corroborates Lloyd’s testimony that he saw the stop sign in ample time to bring his car to a complete halt before the intersection, and in view of this the court finds that a reasonably observant, prudent and careful motorist would have had no difficulty in seeing the essential and substantive part of the sign with the resultant recognition of his duty to stop at the intersection. The trial court was correct in its finding that Lloyd was negligent in entering the intersection at a time when it was not safe for him to do so, but the lower court committed manifest error in holding that the defendant was negligent, and that such negligence was a causative factor in the occurrence of the accident. It is recognized that a stop sign is distinctive both in color and shape.
The facts of McCallum v. State, 246 So.2d 46 (La.App. 3d Cir. 1971) have no relation to the factual situation posed here. In the cited case the plaintiff was injured because the state negligently failed to provide a barricade or suitable warning device for motorists traveling toward a T-intersection when the road on which such a motorist was moving suddenly terminated.
No material significance is placed by a reasonable, careful and prudent motorist with respect to the manner in which he drives his vehicle when he is confronted by an inoperative blinker light. The inoperative status of the beacon light was not established to he a causative factor in this case, and no bearing on the occurrence of this accident can be attached to a dead blinker light, especially in view of our holding that the testimony of Lloyd that he saw the stop sign was uncontradicted and supported by the photographic evidence. Since Lloyd did not stop or maintain his stopped position for a sufficient length of time to permit Cheramie to clear the intersection, there is no justification for holding that Lloyd would have given credence to a working blinker light.
The evidence in the record clearly reflects that Ronald Lloyd had ample and sufficient time to stop at the subject intersection, traveling at a speed of 10 to IS miles per hour, whether he recognized the traffic control as a stop sign when he was 110 feet west of the east end of the bridge when he said he did, or that his recogni *490 tion did not come into fruition until he was 48 feet west from the western edge of the road blacktop.
The rule that the burden of proving his case rests upon the plaintiff is well accepted and does not require citation of authority. The plaintiff has fallen short of establishing his case.
The judgment of the trial court is reversed at plaintiff-appellee’s costs.
Reversed and rendered.